**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **WACHOVIA BANK, N.A.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:09-CV-0076** |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **ZOMAX INCORPORATED, et al.,** | : | **MAGISTRATE JUDGE KEMP** |
| | : | |
| **Defendants.** | : | |

## OPINION AND ORDER

## I. INTRODUCTION

This matter is before the Court on the Plaintiff Wachovia Bank, N.A.'s ("Wachovia")
Motion for Discharge, Dismissal and Attorneys' Fees (Doc. 48), Defendant Capital City
Consulting, Inc.'s ("Capital City") Motion for Summary Judgment (Doc. 64), Defendants
Willow Lake Property LLC, Jes Willow Lake LLC, Willow Lake Tenn LLC, MSP Willow Lake
LLC, and Res Willow Lake LLC's (collectively, "Willow Lake") Motion for Summary
Judgment (Doc. 66), and Defendant ComVest Inomax Holdings, LLC's ("ComVest") Motion for
Summary Judgment (Doc. 72). For the reasons set forth below, this Court **DENIES** Wachovia's
Motion for Discharge, Dismissal and Attorneys' Fees, **DENIES** Capital City's Motion for
Summary Judgment, **DENIES** Willow Lake's Motion for Summary Judgment, and **DENIES**
ComVest's Motion for Summary Judgment.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

Zomax, Incorporated ("Zomax") is a corporation organized under the laws of Minnesota,

with its principal places of business in Minnesota and Ohio.

## 1. Willow Lake

On or about July 9, 2008, Willow Lake obtained a judgment against Zomax in Shelby county, Tennessee, in the amount of $304,804.07, with interest. On July 29, 2008, Willow Lake domesticated this judgment in the Franklin County, Ohio Court of Common Pleas, Case No. 08-JG-28501 (the "Ohio Action").

On October 7, 2008, Willow Lake filed a Notice, Affidavit, and Order of Garnishment ("Willow Lake Garnishment") in the Ohio Action in connection with a commercial checking account at Wachovia, bearing Account No. 2000029362604 ( the "Zomax Checking Account"). On October 14, 2008, the Willow Lake Garnishment was served on Wachovia's Legal Order Processing department. On October 14, 2008, the amount of money, property, or credits of Zomax in the possession or under the control of Wachovia (the "Zomax Funds") was $316,830.14.

On October 18, 2008, Wachovia's Legal Order Processing department attached the Zomax Funds pursuant to the Willow Lake Garnishment. On November 5, 2008, Official check No. 3100042024 in the amount of $316,830.14 was issued by Wachovia and sent to the Franklin County Clerk of Court.

Also on November 5, 2008, Willow Lake filed a Motion to Show Cause as to Why Wachovia Should Not Be Held in Contempt in the Ohio Action. On November 26, 2008, the Franklin County, Ohio Court of Common Pleas issued an Order on Motion to Show Cause and scheduled a Show Cause hearing for February 13, 2009. The Show Cause hearing has since been stayed.

## 2. Capital City

On or about August 20, 2008, Capital City obtained a judgment against Zomax in the Franklin County, Ohio, Court of Common Pleas, Case No. 08-CV-5046, in the amount of $86,491.57, with interest and costs. Capital City domesticated this judgment in the North Carolina General Court of Justice, Superior Court Division, for Forsyth County, Case No. 08-CVS-7328 (the "North Carolina Action").

On December 5, 2008, Capital City filed a garnishment (the "Capital City Garnishment") in the North Carolina Action, in connection with the Checking Account. On December 10, 2008, Wachovia's Legal Order Processing department received the Capital City Garnishment. Also on December 10, 2008, the Forsyth County Superior Court issued an Order in the North Carolina Action forbidding Wachovia from transferring or disposing of any Zomax funds owed to Capital City (the "Freeze Order"). On or about December 18, 2008, Eric Handler, an attorney representing Capital City in the Capital City Garnishment in North Carolina, received from Wachovia a copy of the Freeze Order, stamped with the notation: "NO FUNDS." The Court scheduled a hearing for January 6, 2009. The North Carolina Action was later continued until February 24, 2009, with instructions to Wachovia to refrain from transferring or disposing any Zomax funds owed to Capital City.

## 3. Wachovia

On October 20, 2006, Zomax entered into a Loan and Security Agreement ( the " 2006 LASA") with Inoveris, LLC, Saturn Acquisition, LLC ("Saturn"), and Zomax as borrowers (collectively, "the Borrowers"); the Guarantors; the Lenders; and Wachovia, as Administrative

Agent.  Pursuant to the 2006 LASA[1], Zomax held the Zomax Checking Account at Wachovia.

A Deposit Account Control Agreement, executed on April 12, 2007 (the "First Lien DACA"),

gave Wachovia, as the First Lien Secured Party, a security interest in two deposit accounts in

Zomax's name, specifically the Zomax Funding Account and the Zomax Controlled

Disbursement Account.  A separate Deposit Account Control Agreement (the "Second Lien

DACA"), also executed on April 12, 2007, gave Wachovia, as the First Lien Secured party, a

security interest in the Zomax Checking Account.  The terms of both the First Lien DACA and

the Second Lien DACA were governed by the Uniform Commercial Code ("U.C.C.") as adopted

by the State of Florida.  The Zomax Checking Account served as a collection account for Zomax

funds, and funds were transferred daily from the Zomax Checking Account to Zomax's parent

account with Wachovia (the "Wachovia Zomax Parent Account").

After Wachovia sent Official check No. 3100042024 to the Franklin County Clerk of

Court on November 5, 2008, Charles Stafford ("Stafford"), a paralegal in the Wachovia Legal

Processing department, became aware of Wachovia's priority senior position regarding the

Zomax Funds.  Stafford placed a Stop Pay on the check and contacted the Garnishment Clerk at

the Franklin County Court of Common Pleas.  On November 12, 2008, the clerk returned the

check and the Answer of Garnishee.  The Zomax Funds from the returned check were credited

back to the Zomax Checking Account.  On December 1, 2008, Wachovia transferred, or set off

against, the Zomax Funds, moving monies from the Zomax Checking Account to the Wachovia

Zomax Parent Account, also with Wachovia.

---

[1]The 2006 LASA was later amended several times.  The final iteration of the 2006 LASA was Amendment No. 9 to the Loan and Security Agreement, dated as of October 14, 2008.

On December 23, 2008, Wachovia, the Borrowers, the Guarantors, and the Lenders executed a Termination Agreement (the "Termination Agreement"). Under the terms of the Termination Agreement, the Borrowers were to remit, among other things, $341,804.07 payable under the Willow Lake Garnishment[2] to the Franklin County Clerk of Court, pursuant to the terms of the Willow Lake Garnishment.

### 4. Comvest

ComVest is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Florida. ComVest claims a superior interest in any Zomax Funds.

On or about March 2, 2007, the Borrowers, the Guarantors, the Lenders, and LBC Credit Partners, L.P. ("LBC"), as Administrative Agent, entered into a Loan and Security Agreement (the "2007 LASA"). Included in the collateral subject to the Security Agreement was the Zomax Checking Account.

In order to perfect its security interest, LBC: (1) executed a U.C.C. financing statement, which it filed with the Minnesota Secretary of State;[3] and (2) executed the Second Lien DACA. The Second Lien DACA gave to LBC, as the Second Lien Secured Party, a secured interest in

---

[2] The Termination Agreement states that the amount of $341,804.07 represents "payment in full of all amounts payable under the Court Order and Notice of Garnishment, dated October 7, 2008" and that the Existing Lender has "a security interest in and right to set off against the sum specified...which has been or shall be remitted herewith to Existing Agent [Wachovia] and all interest and earnings thereon and all proceeds thereof." (Wachovia Supp. Brief in Support of Mot. For Discharge, Ex. 2, pp. 2, 5.)

[3] The U.C.C. Financing Statement, filed March 2, 2007, bears the initial filing statement number of 200715746059 and covers the following collateral: "All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof. (ComVest Mot. For Summ. Judg. Ex. E.)

the Zomax Checking Account. Pursuant to the Second Lien DACA, funds were to be transferred from the Zomax Checking Account to LBC's designated deposit account, an account with the Citizens Bank of Pennsylvania (the "LBC Deposit Account").

On December 23, 2008, LBC filed a Motion to Intervene in the Ohio Action, claiming: (1) an interest in the account subject to the Willow Lake Garnishment; or in the alternative that (2) LBC had a competing interest in funds such that a common question of law or fact existed as to the rightful priority between Willow Lake and LBC.

On January 20, 2009, LBC executed an Assignment and Acceptance Agreement (the "Assignment and Acceptance Agreement"), assigning its security interest in Zomax to ComVest. Pursuant to the Assignment and Acceptance Agreement, and also on or about January 20, 2009, the Borrowers and Guarantors of the 2007 LASA executed an Agreement Regarding Agency Resignation, Appointment and Acceptance (the "Appointment and Acceptance Agreement"). In the Appointment and Acceptance Agreement, LBC, as Retiring Agent, assigned all liens and security interests to ComVest, as Successor Agent. Additionally, on January 16, 2009, the Borrowers, LBC, ComVest, and Wachovia signed a notice letter, providing notification of the Assignment and Acceptance Agreement under the 2007 LASA.

On February 17, 2009, ComVest executed a Deposit Account Control Agreement (the "ComVest Second Lien DACA"). Under the ComVest Second Lien DACA, funds were to be transferred from the Zomax Checking Account to ComVest's designated deposit account, an account with Wachovia (the "ComVest Deposit Account").

### 5. The Funds at Issue

On December 22, 2008, following a sale of assets and inventory, Zomax provided funds

to Wachovia in the amount of $341,804.07, which Wachovia received and set aside.

## B. PROCEDURAL BACKGROUND

On January 30, 2009, Wachovia filed with this Court a Complaint for Interpleader and Injunctive Relief against Defendants Capital City, ComVest, Willow Lake, and Zomax. Upon filing the complaint, Wachovia deposited the Zomax Funds with the Court in the following manner: (1) a check made payable to Clerk, U.S. District Court, in the amount of $252,810.17 with the registry of this Court; and (2) a bond payable to the clerk of the court in the amount of $88,993.90.

On January 30, 2009, Wachovia also filed a Motion for a Temporary Restraining Order. On February 2, 2009, after holding a preliminary informal conference with the parties pursuant S.D. Ohio Civ. R. 65.1(a), this Court granted the Temporary Restraining Order (Doc. 5). This Court found that Wachovia had satisfied the requirements for instituting a statutory interpleader action, as set forth in 28 U.S.C. § 1335, because: (1) the value of the Zomax Funds held by Wachovia was over $300,000; (2) Capital City, ComVest, and Willow Lake were all claimants of diverse citizenship whose claims were adverse to and independent of one another; and (3) Wachovia deposited the Zomax Funds into the registry of the Court. The Temporary Restraining Order was extended on February 12, 2009 and again on February 23, 2009 (Docs. 7 and 12, respectively), to accommodate newly retained counsel for the parties. On March 5, 2009, this Court issued an Agreed Order of Injunction (Doc. 22), effective until the resolution of this case, enjoining the state court garnishment actions and preventing any of the defendants from instituting any new garnishment actions.

On May 27, 2009, after holding a status conference with the parties in this case,

Magistrate Judge Kemp issued an Order (Doc. 51), which directed the parties' actions going forward. The parties were ordered to exchange all documents which would be relied upon to establish all claims to funds moving forward. Additionally, to the extent that the parties did not resolve the issues forming the basis for their completed claims, Magistrate Judge Kemp ordered each party was to submit a motion for summary judgment in support of its claim.

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P.56(e)(2); *see Celotex*, 477 U.S. at 324; *Search v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. LAW AND ANALYSIS

Where there are competing claims to funds, "the common law principle of first in time,

first in right controls." *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1176 (6th Cir. 1990) (citing *United States v. City of New Britain, Conn.*, 347 U.S. 81, 85 (1954)).

## A. WACHOVIA

### 1. Filing of an Interpleader Action

The Sixth Circuit has explained that an interpleader action typically proceeds in two stages.  During the first stage, the court "determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader."  *United States v. High Technology Products, Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (internal citations omitted).  In the second stage, "the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions and trial."  *Id.*

Interpleader protection does not extend to counterclaims which are separate from the claims to the interpleaded funds.  *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) (cautioning that "interpleader was never intended . . . to be an all-purpose 'bill of peace'").  A valid interpleader action will, however, shield the interpleader-plaintiff from liability for counterclaims where the "counterclaims are essentially based on the plaintiff's having opted to proceed via an interpleader complaint rather than having chosen from among adverse claimants." *Metropolitan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001) (holding that counterclaims that arise from "utilizing the protections afforded by the interpleader" should be dismissed).

This Court has previously held that Wachovia's interpleader action was proper.

Wachovia is not subject to liability for allegations which are simply claims to the interpleaded funds. Wachovia, however, will not be subject to interpleader protection for claims that are separate from the claims to the interpleaded funds.

## 2. Security Interest in Zomax

Courts generally "have held that a bank may set off a bank account against the matured indebtedness of its depositor, although the bank has been garnisheed at the instance of a creditor of the depositor." *Walter v. National City Bank*, 42 Ohio St. 2d 524, 525 (Ohio 1975) (quoting *Schuler v. Israel*, 120 U.S. 506, 510 (1887)) (holding that "the bank had no contractual right to treat the [promissory] note as a demand note and set off the commercial account against that debt before maturity."). Where funds are due or collectible at the time of service under the contract between the debtor and the bank, the bank has a priority in those funds. *Monroe Retail, Inc. v. Charter One Bank, N.A.*, 624 F. Supp. 2d 677, 684 (N.D. Ohio 2007) (internal citations omitted). Thus, judgment creditors "step into the shoes" of the judgment debtor and have rights equal to those of the judgment debtor. *Sesko v. Hutchins Caw, Inc.*, 2006 Ohio 5434, P1 (Ohio Ct. App., Cuyahoga County October 19, 2006); *Conover v. Porter*, 14 Ohio St. 450, 454 (1863) ("Judgment liens attach, subject to the prior equities of parties.").

Wachovia has asserted that it is because of its right to set-off, as a secured creditor of Zomax, that it requested the return, of Official check No. 3100042024 in the amount of $316,830.14, issued pursuant to the Willow Lake Garnishment, from the Franklin County Clerk of Court.[4]

---

[4] There is authority to the effect that a garnishee bank's activity can constitute a waiver of the right of setoff "when a bank after service of garnishment, allows a depositor to withdraw funds from the account or honors checks drawn on the account." *Michigan Carpenters' Council*

### 3. Failure to Answer Willow Lake's Garnishment Order

Under Ohio garnishment law, a party served with a garnishment order, the garnishee, is required to answer a garnishment order. Ohio Revised Code § 2716.21(B) states:

> After the order of garnishment is served upon the a garnishee...the garnishee shall return the answer to the court that issued the garnishment order....The garnishee shall answer all questions addressed to the garnishee regarding...the amount of money, property, or credits, other than personal earnings, of the judgment debtor that are in the garnishee's possession or under the garnishee's control at the time of service of the order, whichever is applicable.

O.R.C. § 2716.21(B). Consequences for failing to answer as required by this section include the ability of the court to "proceed against the garnishee for contempt." O.R.C. § 2716.21(E).

Additionally, the statute provides:

> If a garnishee fails to answer as required by this section, answers and the garnishee's answer is not satisfactory to the judgment creditor, or fails to comply with the order of the court to pay the money owed...the judgment creditor may proceed against the garnishee by civil action. Thereupon, proceedings may be held as in other civil actions. Judgment may be rendered in favor of the judgment creditor for the amount of money owed the judgment debtor in the garnishee's possession at the time the garnishee was served with the order of garnishment...

O.R.C. § 2716.21(F). In general, a garnishee bank is not liable for failing to provide funds of the debtor pursuant to a garnishment order where the debtor itself had no right to those funds. *See Lighting by Design, Inc. v. Yoder*, 146 Ohio Misc. 2d 28, 31 (Ohio Mun. Ct. 2008) ("It would be manifestly unfair to the garnishee bank to be held liable for payment of the underlying debt where it had no funds in its hands payable to the debtor at the time of garnishment."). A court can not exercise its contempt powers under O.R.C. § 2716.21(E) to compel a garnishee to turn

---

*Pension Fund v. Smith & Andrews Constr. Co.*, 681 F. Supp. 1252, 1255 (E.D. Mich. 1988); *McKinney, Inc. v. Wyman Corp.*, 102 Ohio App. 3d 648, 651 (Ohio Ct. App., Cuyahoga County 1995). None of the defendants, however, contested that Wachovia's right of set off or the manner in which Wachovia actually exercised this right.

over funds where they were already provided to the bank, which held a superior interest. *RLM Indus., Inc. v. Independent Holding Co.*, 83 Ohio App. 3d 373, 377 (Ohio Ct. App., Cuyahoga County 1992).

Additionally, garnishees are nonparties who "may not appeal regarding their garnishment liability until that liability is finally determined sometime later, in either a contempt proceeding...or a civil action...." *Januzzi v. Hickman*, 61 Ohio St. 3d 40, 44 (Ohio 1991) ("This procedure admittedly imposes risks on the garnishee. Being unable to appeal, the garnishee is faced with the dilemma of either obeying the order to pay into court or disobeying and risking contempt if it is wrong in its assessment of its liability."); *see also Secor v. Witter*, 39 Ohio St. 218, 231 (Ohio 1883) ("The garnishee is not, as in many of the States a party to the attachment action. He has no day in court. The order made by the justice is not an adjudication between the plaintiff and the garnishee. It does not determine their ultimate rights."). In a civil action, the garnishee "will have the full ability to raise viable defenses." *Secor*, 39 Ohio St. At 231.

At the same time, however, whether a garnishment order was answered is a distinct issue from whether funds are actually available for garnishment pursuant to the garnishment order. The Answer of Garnishee indicates that the form should be returned to the Franklin County Clerk of Courts regardless of whether the garnishee has funds available for garnishment. *See* Dec. of Stafford, Ex. E Answer of Garnishee. The Ohio Statute, Section 2716.21(B), is clear that the garnishee must answer a garnishment order. Wachovia was, therefore, required to answer in the Ohio Action regardless of whether funds were available for garnishment.

### 4. Actions in "Good Faith"

Under Ohio law, "[a] garnishee who acts, or attempts to act, in accordance with Chapter

2716...is not liable for damages in any civil action for any action taken pursuant to that chapter in good faith or any omission made in good faith.  O.R.C. § 2716.21(F)(2).  Courts have found that "good faith" in the garnishment context exists where "given all the background information and circumstances" there was no indication "that there was any lack of good faith."  *Carr Supply, Inc. v. Rockford Homes, Inc.*, 2003 Ohio 4676, P25 (Ohio Ct. App., Franklin County Sept. 4, 2003) ("[T]his is not a situation where [garnishee] was writing a letter, such as he wrote, and then turning around and trying to make payments to [the debtor] or his business on the side and trying to cover up that type of thing").

Wachovia has argued that even if Willow Lake is entitled to pursue a claim under Ohio Code Section 2716.21(F)(1), Wachovia acted in good faith in compliance with Ohio Code Section 2716.21(F)(2).  Wachovia asserts that it answered the garnishment order in the Ohio Action, and that it was the Franklin County Clerk of Court who returned the answer unfiled when Wachovia requested the return of Official check No. 3100042024.

Willow Lake asserts that Wachovia made no effort to correct the error of the Franklin County Clerk of Court.[5]  Willow Lake further argues that no answer was ever filed and that Wachovia waited months, from October 14, 2008 when the Willow Lake Garnishment was served, until January 30, 2009 when this interpleader action was filed to take any action.

Under Ohio law, "[t]he question of good faith is a fact issue for the jury, and as such all facts and circumstances reasonably applicable within the law to such issue should be before the jury."  *Netzley v. Nationwide Mut. Ins. Co.*, 296 N.E.2d 550, 559 (Ohio Ct. App., Montgomery

---

[5]The related court docket for the Ohio Action indicates "check sent in error sent back." (Doc. 21, Ex. E).

County 1971). As there is a genuine issue of material fact in dispute with regard to whether Wachovia's failure to answer was in good faith, summary judgment is inappropriate. Also, because there is a genuine issue of material fact, Wachovia can not be dismissed and discharged from this action.

### 5. Appropriate Measure of Relief

Wachovia argues that even if Willow Lake has a claim for relief under Ohio Code Section 2716.21(F)(1), Willow Lake is not entitled to damages. Wachovia asserts that the appropriate measure of relief is the amount which the garnishee would have otherwise owed the judgment debtor – in this case the amount which Wachovia would have owed Zomax. Because Zomax actually owed Wachovia $9,353,125.78, the argument follows, Willow Lake was not entitled to anything.

Under Ohio law, a trial court does not abuse its discretion when it awards attorneys' fees for violating a garnishment order even where "it appears that the bank's perfected security interest in all the proceeds rendered the junior [other] obligations such that none of the proceeds would have remained to pay [the judgment creditor]." *RLM Indus., Inc.*, 83 Ohio App. 3d at 377 (upholding a trial court's award of attorneys' fees paid from an attorney held in contempt for failing to respond to a garnishment order).

Thus, although Willow Lake may not have been entitled to funds sought by the Willow Lake Garnishment, the Court may award attorneys' fees.

### 6. The Termination Agreement

"[A]n action for a breach of contract can only be maintained by the parties to the contract or those deriving rights from the contracting parties." *American Rock Mechanics, Inc. v.*

*Thermex Energy Corp.*, 80 Ohio App. 3d 53, 58 (1992) (citing *United States Fidelity & Guaranty Co. v. Truck & Concrete Equipment Co.*, 21 Ohio St. 2d 244, 250 (Ohio 1970)). Among those who can derive rights from a contract are third-party beneficiaries. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 370-71, 104 S. Ct. 1844, 80 L. Ed. 2d 366 (1984) (noting that the rights of a third-party beneficiary are subject to all the defenses that arise out of the contract between promisor and promisee, unless the parties to the contract specify otherwise). Third-party beneficiaries do not have to sign the actual contract. *Joint Admin. Comm. of the Plumbing & Pipefitting Indus. v. Wash. Group Int'l, Inc.*, 568 F.3d 626, 631 (6th Cir. 2009). If "the promisee . . . intends that a third party should benefit from the contract," then an individual who is not a party to a contract may have enforceable rights as an intended third party beneficiary. *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St. 3d 36, 521 N.E.2d 780, 784 (Ohio 1988) (quoting *Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980)).

In Count Two of its Amended Counterclaim, Willow Lake asserts that Wachovia breached the Termination Agreement by failing to comply with the terms and remit funds to the Franklin County Clerk of Court. *See* supra note 2.

Wachovia argues that Willow Lake's assertion is still a claim to the interpleaded funds now on deposit with this Court. Wachovia can not be separately liable for having brought an interpleader action rather than favoring Willow Lake's claim as between Willow Lake, Capital City and ComVest.

It is uncontested that Wachovia did not comply with the express terms of the Termination Agreement, under which $341,804.07 was to be deposited with the Franklin County Clerk of

Court.  It is also uncontested that at the time the Termination Agreement was executed, Wachovia had been served with both the Willow Lake Garnishment and the Capital City Garnishment.  The exact sum of money that was to be deposited with the Franklin County Clerk of Court is now on deposit with this Court and constitutes the interpleaded funds.

The issue then becomes whether Wachovia has a defense to the breach of the Termination Agreement.  This Court finds that there are material facts in dispute as to whether Wachovia has a valid defense to the breach of the Termination Agreement.  Having been unable to make a determination to as to defenses at this stage of the litigation, this Court will also refrain from fashioning a remedy.  This Court notes, however, that it would have latitude to fashion a remedy in order to compensate fully the aggrieved party.  *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 704 (6th Cir. 2005) (internal citations omitted) ("Under Ohio law...[d]amages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach.") *See* also Arthur Linton Corbin, Corbin on Contracts § 992 (Interim ed. 2002). With regard to potential defenses "a party to a contract may be excused from performing when an unforeseen event that makes performance of a contractual duty impossible from an objective standpoint occurs subsequent to the formation of the contract and prior to the time when the duty to perform becomes absolute."  *Wittrock v. Paragon Paper Co.*, 1985 Ohio App. LEXIS 9676 (Ohio Ct. App., Hamilton County Dec. 18, 1985).

## B. COMVEST

### 1. Security Interest in Zomax

It is uncontested that ComVest perfected its security interest in the Zomax Checking

Account and the ComVest Deposit Account by executing the ComVest Second Lien DACA on February 17, 2009. LBC had previously perfected its security interest pursuant to the 2007 LASA on April 12, 2007.

## 2. Control of Appropriate Bank Accounts

Under the U.C.C., as adopted in Florida,[6] "[i]f a secured party assigns a perfected security interest or agricultural lien, a filing under this chapter is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor." Fla. Stat. § 679.3101(3); *see also* Official Comment 4 to U.C.C. § 9-310. Where "possession of collateral is maintained by an assignee or by the assignor...no further perfection steps need be taken on account of the assignment to continue perfection as against creditors and transferees of the original debtor." *Id*. The "assignee of a security interest [can] piggyback on the original secured party's perfection." *In re: Versus Invest. Mgmt., LLC*, 344 B.R. 536, 545 (Bankr. N.D. Ohio 2006) (internal citations omitted); *see also Grocery Supply Co. v. Winterton Food Stores*, 655 So. 2d 555, 557 (La.App. 2 Cir. May 10, 1995) ("[W]hen a secured party assigns a perfected security interest, the assignee need not make a filing in order to continue the prior secured status as against creditors of the original debtor.").

Florida law provides that the "local law of a bank's jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in a deposit account maintained with that bank." Fla. Stat. § 679.3041(1). Under North Carolina law, where Wachovia is located, where the security interest is perfected by the control of the deposit

_____

[6]Florida law controls the 2006 LASA, the 2007 LASA, and the other documents related to those agreements.

account, perfection occurs "when the secured party obtains control and remains perfected by control only while the secured party retains control." N.C.G.S. § 25-9-314(b).

It was not necessary for ComVest to file a financing statement with the Florida Secretary of State, as LBC had previously done. Yet, ComVest, by its own admission, did not obtain control of the deposit account until February 17, 2009, after this interpleader action was filed and the interpleaded funds were on deposit with this Court. Since ComVest did not have control over the deposit accounts prior to February 17, 2009, ComVest security interest was not perfected as to the deposit accounts before February 17, 2009.

### 3. Applicability of Termination Agreement

ComVest asserts that neither ComVest nor LBC was a party to the Termination Agreement between Zomax, Wachovia, and other parties involved in the 2006 LASA. ComVest further asserts that it has a valid security interest in "[a]ll assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof." (ComVest Mot. For Summ. Judg. Ex. E.) According to ComVest, that valid security interest entitles ComVest to the interpleaded funds because those funds resulted from a sale of Zomax assets and inventory. Because ComVest, at least with regard to the non-bank account collateral, assumed the status of LBC pursuant to the January 20, 2009 assignment, its security interest can trace the proceeds of Zomax's asset sale resulting in the funds on deposit with this Court.

### 4. Waiver of Interest in Funds

Under Florida law, a party can waive certain rights that exist pursuant to a contract.[7] *See Sensormatic Elecs. Corp. v. First Nat'l Bank Pa.*, 148 Fed. Appx. 99, 104 (3d Cir. 2005) ("Florida law on waiver requires some affirmative action by the parties before the Court will recognize waiver of a contract provision."); *Peninsula Fed. Savings & Loan v. DKH Prop.*, 616 So. 2d 1070 (Fla. Dist. Ct. App. 1993) (holding that where plaintiff claimed it had provided oral notice of option acceptance and defendant failed to object, waiver could be considered). Waiver is "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). It is possible that "a party may waive its contractual rights merely by taking actions inconsistent with those rights." *Mora v. Abraham Chevrolet-Tampa, Inc.*, 913 So. 2d 32, 34 (Fla. Dist. Ct. App. 2d Dist. 2005).

Willow Lake and Capital City argue that even if ComVest has a valid security interest, ComVest waived the interest. Willow Lake and Capital City make this argument under two theories. Under the first theory, ComVest or a related ComVest entity became the owner of Zomax in 2006. At Oral Argument on the Summary Judgment Motions, ComVest expressly denied that it owned Zomax in 2006.

Under the second theory, ComVest had notice of the Termination Agreement and failed to object to any funds being set aside to be sent to the Franklin County Clerk of Court. This Court notes that the address for the Inomax, c/o The ComVest Group, on the Termination Agreement and the address for the ComVest entity currently involved in this litigation are the

---

[7]The parties argue that ComVest waived certain rights pursuant to the Termination Agreement. The Termination Agreement specifies that the agreement "shall be governed by the internal laws of the State of Florida." Wachovia Supp. Brief. Ex. 2.

same: One North Clementis, Suite 300, West Palm Beach, FL 33401.  Wachovia Supp. Brief. Ex. 2; Doc. 96, Willow Lake Omnibus Reply Memo. Ex. 1.

Each theory under which ComVest alleges it is entitled to the Zomax Funds involves material issues about which the facts are disputed.  Specifically, there are material facts in dispute as to whether ComVest: (1) had knowledge of the terms of the Termination Agreement; and (2) waived its interest in the funds expressly set aside within that agreement, which are now on deposit with this Court.  Therefore, because of these issues, it would be improper to grant summary judgment to ComVest based solely upon any security interest which may have been perfected at the time when Wachovia initiated this Interpleader action.

### 5. Requirement of an "Event of Default"

Under the UCC provisions of both Florida and North Carolina law, where a party has "possession of collateral or control of collateral," that party "shall apply money or funds received from the collateral to reduce the secured obligation, unless remitted to the debtor." U.C.C. § 9-207(C) . This is true whether the secured party has possession of the collateral either before or after the default.  *See* Official Comment 4 to U.C.C. § 9-207.

Willow Lake and Capital City argue that the creditors' rights to Zomax assets, including the Zomax Funds, would trigger only upon an event of default by Zomax in the payment of its loan obligations.  They assert that facts indicate that Zomax regularly purchased and sold assets and deposited and withdrew money in the course of its business.  In this case, Willow Lake and Capital City argue that there is no evidence of a Zomax default on the 2007 LASA, so a security agreement is not applicable.

ComVest contends that Willow Lake and Capital City fail to distinguish when an event

of default is needed: priority or enforcement. ComVest argues that it did not need an event of default to establish its priority. Therefore, ComVest asserts that it remains the priority secured claimant in this proceeding. Whether ComVest did have a perfected security interest in either Zomax assets, the sale of which created the interpleaded funds, or the funds themselves, via the ComVest Second Lien DACA, is not dispositive in this case. Whether ComVest had actual knowledge of the terms of the Termination Agreement and, therefore waived its interest in those funds, is a genuine issue of material fact in dispute in this case.

## C. WILLOW LAKE

Both ComVest and Capital City have challenged the propriety of Willow Lake's Garnishment of the Zomax Checking Account, raising jurisdictional and service of process concerns.

### 1. Jurisdiction

"Ohio law distinguishes between a debt and tangible goods in the context of attachment or garnishment proceedings." *SI-Fostoria DC, LLC v. General Electric Capital Business Asset Funding Corp.*, 2005 WL 81902, 3 (N.D.Ohio 2005). In the context of garnishment, "a debt has no fixed situs and may be reached in any jurisdiction in which the person owing it may be found and served with a summons, if the person to whom the debt was due could sue his debtor therefore in that jurisdiction." *Ohio Loan & Discount Co. v. Siemen*, 142 Ohio St. 384, 386-87 (Ohio 1943).

In Ohio, a "proceeding for garnishment of personal property, other than personal earnings, may be commenced after a judgment has been obtained by a judgment creditor...." O.R.C. § 2716.11. When a foreign judgment has been obtained, it "has the same effect...and may

be enforced or satisfied in the same manner as a judgment of a court of common pleas." O.R.C. § 2329.022.

Both ComVest and Capital City argue that the Franklin County Court of Common Pleas lacked jurisdiction over the Zomax Checking Account subject to the Willow Lake Garnishment.

This argument fails. Zomax is located in Franklin County at 7001 Discovery Boulevard, Dublin, Ohio 43017. (Willow Lake Ans. Ex. C.) Willow Lake domesticated its foreign judgment obtained in Tennessee in the Franklin County, Ohio Court of Common Pleas, Case No. 08-JG-28501. Under Ohio law, because Willow Lake would have been able to sue Zomax in Franklin County, Zomax's debts can be reached in Franklin County, regardless of the location of the Zomax Checking Account.

## 2. Service of the Garnishment Order

In Ohio, when a plaintiff has "good reason to believe, and does believe, that a person named in the affidavit has property of the defendant other than personal earnings in his possession...the person is the garnishee." O.R.C. § 2715.091. Additionally, under the Federal Rules of Civil Procedure, a party waives any defense [including insufficient service of process] listed in Rule 12(b)(2)-(5) "by...failing to either make it by motion...or include it in a responsive pleading". Fed. R. Civ. P. 12(h).

Capital City and ComVest also argue that the Willow Lake Garnishment was not properly served upon Wachovia. Specifically, they state that the Willow Lake Garnishment was served upon Wachovia Financial Services, Inc., rather than Wachovia Bank National Association. Willow Lake states that it had reason to believe that Wachovia Financial Services, Inc. Had control over the Zomax Checking Account.

-22-

Wachovia has never questioned the service of process of the Willow Lake Garnishment. Additionally, Capital City and ComVest do not have standing to assert any claims Wachovia may or may not have with regard to the service in this matter.[8]  Thus, this Court finds that the Willow Lake Garnishment was proper, and that there is no existing issue regarding service of process.

## D. CAPITAL CITY

### Proper Domestication of North Carolina Judgment

In North Carolina, a foreign judgment that is properly filed is deemed to have the same effect, and is subject to the same defenses, as a judgment obtained from North Carolina. N.G.C.S. § 1C-1703(C).  Under North Carolina Law, after filing a foreign judgment and affidavit, the judgment creditor should serve notice on the judgment debtor and then can proceed to enforce the judgment. N.C.G.S. § 1C-1704 ("[T]he judgment debtor has 30 days from the date of receipt of the notice to seek relief from the enforcement of the judgment, and that if the judgment is not satisfied and no such relief is sought within that 30 days, the judgment will be enforced in this State in the same manner as any judgment of this State.")

Capital City argues that it is entitled to the Zomax Funds on deposit with this court because as between it and the other judgment creditor, it properly complied with domesticating its judgment in North Carolina where the Zomax Checking Account was located.

Both Willow Lake and Capital City properly domesticated their judgments against

---

[8]ComVest, in its reply memorandum, attempts to distinguish Wachovia's failure to raise the defense of inadequate service of process because Wachovia merely brought this Interpleader action.  ComVest asserts that Wachovia's failure to raise this defense is therefore not binding on any other parties.  ComVest can not claim an injury from the Willow Lake Garnishment to which it was not a party.

Zomax in Ohio and North Carolina, respectively. Willow Lake served Wachovia with the Willow Lake Garnishment on October 14, 2008. Wachovia received the Capital City Garnishment on December 10, 2008. Under the principle of "first in time, first in right," as between Willow Lake and Capital City, Willow Lake has priority as a judgment creditor. Thus, though Willow Lake has priority over the Zomax Funds as between the claims of Willow Lake and Capital City, ComVest's claims, and the material facts in dispute related to those claims, prevent this Court from granting any of the motions for summary judgment.

## V. CONCLUSION

For the foregoing reasons Wachovia's Motion for Discharge, Dismissal and Attorneys' Fees is **DENIED**, Capital City's Motion for Summary Judgment is **DENIED**, Willow Lake's Motion for Summary Judgment is **DENIED**, and ComVest's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: December 17, 2009**